## Marcus Daggett *vs.* Salome Shaw.

A grantor, who conveys land with warranty to A., bounding him on a certain line, and then conveys land to B. with warranty, bounding him on A.'s line, is a competent witness, in a suit between A. and B., to testify as to the situation of the monuments on their dividing line, at the time of his conveyances, although those monuments do not exist at the time when he testifies.

The declaration of a person, while he was in possession of land, claiming it as owner, that his line extended to a certain boundary which he pointed out when he made the declaration, is admissible in evidence, after his decease, on a trial of a question concerning the boundary line of the same tract of land.

Writ of entry to recover a small parcel of land in Attleborough. At the trial, before *Dewey*, J. the sole question respected the boundary line between the lands of the parties to the suit. The evidence in the case was voluminous ; but the only facts, which need be prefixed to the opinion of the court, were these :

Two contiguous lots of land were formerly owned by Andrew Starkey and Thomas Starkey, sen. ; the northerly lot being owned by said Andrew, and the southerly by said Thomas. Upon the decease of said Andrew, certain portions of his said lot were set off to Mercy Everett and Amos Starkey, two of his children, and the title to these portions vested in Thomas Starkey, jr. on or before the 8th of October 1805 The land, thus set off, and which vested in Thomas Starkey, jr. lay on both sides of the line which was in dispute in this action. Said Thomas, jr. conveyed that part of the aforesaid land, which lay south of said line, to Elisha Morse, jr., and subse-

quently conveyed the northerly part of said land to Joab Daggett, bounding him southerly on said Morse. When said Thomas conveyed to Morse, he ran a new line, beginning on a river, at a stake, "a former bound of Amos Starkey land," and thence running, by a certain course, in a westerly direction, to an agreed point on a road. The question therefore was, where was the stake, the "former bound of Amos Starkey land," as, that being found, the other extremity of the line, on the road, being agreed, the line in controversy could thereby be determined.

The demandant and the tenant both derived title to the land in dispute through Joab Daggett.

The jury returned a verdict for the tenant, and the demandant moved for a new trial, on exceptions to the rulings of the judge at the trial.

The questions of law, which were raised at the trial, and the rulings of the presiding judge thereon, fully appear in the opinion of the court.

*Dexter*, for the demandant.

*Coffin*, for the tenant.

HUBBARD, J. The principal question in this case related to the true location of the north line of the land conveyed by Thomas Starkey to Elisha Morse, jr. it being conceded that the land of the demandant extends to the north line of the Morse lot. The demandant, among other evidence to establish his line, introduced the deed of Starkey to Morse. The tenant, on her part, called the said Thomas Starkey as a witness, to whom the demandant objected as incompetent, because he was the grantor of the land to Morse, and also of the adjacent land northerly, by a conveyance to Joab Daggett.

The court held that it was not competent for the tenant to introduce the evidence of Thomas Starkey, or any other parol evidence, to vary or contradict the deed from Starkey to Morse; but that if a part of the description of the boundaries, as given in the deed, was by reference to monuments, it was competent for the parties to introduce evidence, not contradictory to the deed, to locate such monuments and to testify as to their existence at

Daggett *v.* Shaw.

the time of the executon of said deed ; and that for this purpose Thomas Starkey was a competent witness, notwithstanding he was the grantor, as stated above.

The objection to the competency of Starkey's testimony, from the fact of his being the grantor of the adjacent land, has not been urged in the argument. And we think the objection could not be maintained ; for the witness is not shown to be interested. The fact of being grantor, up to a certain line, to one grantee, and then granting up to the same line to a second grantee, though with warranty, will not make him interested in the question of locating the line ; because, wherever the line is fixed, the second grantee will come to it, without reference to the covenants in his deed, whether it lessens or enlarges the quantity of his land.

But another objection has been raised to the admission of his testimony, grounded upon the fact, as assumed on the argument to be correct, that at the time of making the deed by him, no monument of stake and stones existed, but was then erected ; and at the time of his testifying, such monument had long since disappeared ; and therefore his testimony would in fact amount to nothing more than parol evidence as to where the line was, and not evidence pointing out monuments to which the deed will apply, and is introduced to give a construction to the deed, and consequently falls within the exception, that parol evidence shall not be admitted to vary or control a written contract.

This objection, though ingenious, we think is not tenable, and amounts to no more than an argument against the credibility of the testimony, and not against its competency. The witness is called upon to testify in what place he put down a stake as one of the boundaries of the land at the time of making his deed, which stake is now gone. The stake is called for by the deed ; and testimony as to where it actually stood does not go to vary or control the deed. Monuments are always the subjects of proof, and necessarily so ; and when removed, testimony is admissible to show their location. A witness may identify the place by certain local objects within his recollection, or by other facts and circumstances, by which he is able to fix the spot ; and

such testimony may be weighty or slight, according to the facts stated by him, which go to fix his recollection, and is proper for the consideration of a jury, who are called upon to settle the disputed fact.

The tenant also called Lucas Daggett, brother of the demandant, and son of Joab Daggett, and proposed to show by him that Joab Daggett, while he owned and occupied the Amos Starkey lot, pointed out to the witness a certain ditch as the northern boundary of said lot at the north east corner ; the deed from the heirs of Amos Starkey to Joab Daggett being in the case. The demandant objected to the competency of this evidence ; but the testimony was admitted and the witness testified that the said Joab Daggett pointed out to him the said ditch as the boundary of his lot.

The argument of the demandant's counsel is, that this is hear say testimony ; and it is also further pressed upon the court, that the deceased person was interested to locate the line in dispute between the parties, as it is now claimed to run by the tenant ; and that for this cause, likewise, the testimony should be rejected.

It is undoubtedly true, as an established principle of the law of evidence, that hearsay testimony cannot be received ; and the wisdom of the principle is confirmed by the uniformity of the decisions in various courts and in different countries, which enforce it ; but, like very many general rules, it is not without its exceptions. One of these is traditional evidence or hearsay testimony of ancient witnesses respecting boundaries. In regard to this exception, many authorities have been cited by the counsel for the demandant, to prove that these declarations are only to be received as admissions of a party in possession, when made against his interest. But we think the rule, as it has been practised upon in this Commonwealth, is not so restricted ; and that the declarations of ancient persons, made while in possession of land owned by them, pointing out their boundaries on the land itself, and who are deceased at the time of the trial, are admissible in evidence, where nothing appears to show that they were interested to misrepresent in thus pointing out their boundaries ,

Daggett *v.* Shaw.

and it need not appear affirmatively that the declarations were made in restriction of, or against, their own rights. And for cases in which the general question has arisen, see 3 Dane Ab. 397. *Van Deusen* v. *Turner*, 12 Pick. 532. *Abington* v. *North Bridgwater*, 23 Pick. 170. And we think the law is well expressed, as stated by McLean, J. in giving the opinion of the court in *Boardman* v. *Reed*, 6 Pet. 341 : " That bound- aries may be proved by hearsay testimony, is a rule well settled, and the necessity or propriety of which is not now questioned. Some difference of opinion may exist as to the application of this rule, but there can be none as to its legal force. Land marks are frequently formed of perishable materials, which pass away with the generation in which they were made. By the improvement of the country, and from other causes, they are often destroyed. It is therefore important, in many cases, that hearsay or reputation should be received to establish ancient boundaries."

So in Pennsylvania, in the case of *Caufman* v. *Congregation of Cedar Spring*, 6 Binn. 62, Tilghman, C. J. says, "where boundary is the subject, what has been said by a deceased person is received as evidence. It forms an exception to the general rule." So in North Carolina. *Den* v. *Herring*, 3 Dev. 342. So in Connecticut, Chief Justice Swift, in his Digest, (ed. of 1822,) vol. I. p. 766, says, "in this State, the declarations of old people respecting the ancient bounds or monuments between the lands of individual proprietors, who were acquainted with them, have constantly been admitted in evidence." See also 2 Phil. Ev. (4th Amer. ed.) 628, *note* 477, where the cases are collected. Also the note of Professor Greenleaf, in his val- uable treatise on the Law of Evidence, p. 171.

If the fact of interest in Joab Daggett to establish the line ap- peared in this case, the testimony of Lucas Daggett ought to be rejected. But not only the fact is not made out to the satisfac- tion of the court, in the examination of the deeds and plans, but on the other hand the objection at the trial, as appears by the report of the case, was, that Joab Daggett had no such interest 'n the matter of boundary of the premises as would authorize the

admission of this evidence. It cannot therefore now be argued, with the hope of success, that Joab Daggett was so interested in the question of this boundary as to exclude his declarations on that ground.

We consider the evidence, which was admitted on the trial, to have been this : The testimony of a witness to the declaration of an ancient man made prior to the suit, and who was deceased at the time of the trial, being in possession of the land and stating the extent and limits of his occupation, and pointing out, on the premises, at the same time, the bounds and monuments which marked and defined a portion of the estate. And for the reasons before given, we think the testimony was admissible, as being in accordance with the practice in the courts of this Commonwealth.

*Judgment on the verdict.* '