## GEORGE E. DISHAROON ET AL. *vs.* JOSHUA B. WATERS.

*Seller of Property Who Has No Title Cannot Recover Purchase Price—Equitable Plea in Action on Single Bill—Parol Evidence as to Location of Oyster Lots.*

A party who has no title to property sold by him cannot recover on the single bill given for the purchase money.

In an action upon a writing obligatory under seal for the payment of a sum of money, a plea on equitable grounds states a good defense when it alleges that the single bill was given in consideration of the transfer to the defendant of certain oyster lots, which the plaintiff represented as being situated in the State of Maryland, and that he had a right to transfer under the laws of Maryland, but that in fact the lots were situated in the State of Virginia, and the plaintiff had no right to transfer the same. In such case, a Court of equity would enjoin the prosecution of a suit or the enforcement of a judgment on the writing obligatory, and consequently the plea is good by way of equitable defense.

When the question is whether certain oyster lots sold by the plaintiff to the defendant were within the State of Maryland or in the State of Virginia, a witness may be asked where the lots are located, where the line runs between the

two States in the waters where the oyster grounds in question were situated, and what was recognized by the community generally as the dividing line between the two States. Hearsay testimony and evidence of general reputation are admissible to show what the boundaries of land are.

*Decided January 11th, 1911.*

Appeal from the Circuit Court for Worcester County (JONES and TOADVIN, JJ.).

The cause was argued before BOYD, C. J., SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*John H. Handy* (with whom was *Wm. G. Kerbin* on the brief), for the appellants.

*John W. Staton,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from the judgment of the Court below in favor of the plaintiff in a suit brought on the promise of the defendants under seal to pay the plaintiff two hundred and twenty dollars, with interest.

The declaration alleges that the defendants "by their writing obligatory, now overdue, bearing date the 14th day of November, 1903, promised to pay to the plaintiff twelve months after date the sum of two hundred and twenty dollars, with interest at five per cent.," etc.

The defendants. pleaded that they "were never indebted as alleged"; that the alleged writing obligatory was procured by the fraud of the plaintiff and, for defense on equitable grounds, alleged as follows: "That the parties to this suit are all residents of the State of Maryland, and were residents of said State at and prior to the time of the execution and delivery of said alleged bill or writing obligatory, and that prior

to the execution and delivery by them to the plaintiff of said
alleged bill or writing obligatory, and as an inducement there-
to, and in consideration therefor the plaintiff, representing
to the defendants that he was a legal holder of a certain lot
or lots of oyster bottoms located in the waters of Worcester
County and State of Maryland, pretended or undertook to
sell and transfer the same to the defendants, and that solely
by reason of the representation aforesaid the defendants were
induced to sign and deliver to the plaintiff said bill or writ-
ing obligatory in settlement for said lot; and that after-
wards, to wit, during or about the year nineteen hundred
and seven, or subsequent thereto, the defendants discovered
that the said lot or lots of oyster bottoms were located in the
State of Virginia, and that the said plaintiff could not there-
fore legally hold or sell and transfer the same to the defend-
ants at the time of said representation or afterwards; and
that as a matter of fact, by actual survey conducted under
the Shell Fish Commission of the State of Maryland, during
or about said year 1907, it was shown and determined that
said lot or lots of oyster bottoms were actually within the
State of Virginia, and these defendants aver and charge that
the same are located wholly within the territory of the State
of Virginia, and that the plaintiff obtained from the defend-
ants the said bill or writing obligatory by reason of said false
representations of facts on his part as to the location of said
lot or lots, and therefore should not recover upon the same
against these defendants." The plaintiff demurred to the
third plea, the demurrer was overruled, and issues were then
joined on the first plea and on replications denying the alle-
gations of the second and third pleas.

At the trial the plaintiff offered in evidence the writing
obligatory referred to in the declaration and proved the signa-
tures of the defendants thereto. The defendants then called
Turner F. Disharoon, one of the defendants, "who testified
that prior to the execution and delivery of the aforesaid bill

obligatory to the plaintiff, the latter wanted to sell and we wanted to buy certain oyster grounds near Chincoteague Island, and he represented to the witness the said oyster grounds were within the waters of Maryland, and induced the defendants to purchase the said oyster grounds, on the faith of plaintiff's representations that they were located in the State of Maryland, and that upon this representation and inducement so made the defendants signed and delivered the aforesaid bill obligatory to the plaintiff in settlement of the purchase money therefor; and that all the parties to this case were, at the time of the purchase of said oyster grounds as aforesaid, and ever since have been, residents of the State of Maryland." The witness was then asked the following question: "As a matter of fact where are said oyster grounds located? State to the Court, if you can?" The plaintiff objected to the question, and the Court refused to allow the witness to answer. The witness was then asked the following question: "State, if you know, the line between the State of Maryland and the State of Virginia, in the waters where the oyster grounds which you purchased of Mr. Waters are located?" and upon objection by the plaintiff the Court refused to allow the question to be answered. The witness was then asked the further question: "State, if you know, what is recognized by the community generally in the neighborhood where these oyster lots are located as the line dividing the waters over there, the State of Maryland from the State of Virginia?" and the objection of the plaintiff to this question was also sustained by the Court. The witness was further asked the following question: "State, if you know, the division line between the State of Maryland and the State of Virginia in the waters where said oyster grounds are located, and if yea, state whether or not said oyster grounds are on the Virginia side or on the Maryland side of said line?" but the Court refused to permit the question to be answered.

No further evidence was offered, and the finding and judgment of the Court was in favor of the plaintiff.

The only exceptions in the record are to the rulings of the Court below to which we have referred, and we think there was error in its refusal to allow the questions to be answered.

In the second plea the defendants relied upon fraud, and the third plea, as we understand it, set up the equitable defense of a total failure of consideration for the writing obligatory. It is said in 3 *Pomeroy's Equity,* sec. 1293 (2 ed.): "Equity will never enforce an executory agreement unless there was an *actual* valuable consideration; and, unlike the common law, it does not permit a seal to supply the place of a real consideration. Disregarding mere forms, and looking at the reality, it requires an actual valuable consideration as essential in every such agreement, and allows the want of it to be shown, notwithstanding the seal, in the enforcement of covenants, settlements and executory contracts of every description." In *Dorsey* v. *Hobbs,* 10 Md. 412, Hobbs agreed to sell to Bussard a house and lot in Montgomery County, and Bussard agreed to pay therefor the sum of eleven hundred and fifty dollars. At the time of the contract Hobbs was not seized of the property and never acquired title thereto. The single bill given by Bussard for the sum he agreed to pay for the property came due and Hobbs obtained judgment thereon. Pending the suit on the single bill, a bill was filed for an injunction to restrain the proceedings at law, the injunction was granted, but was subsequently dissolved, and from the latter order the complainant appealed. In disposing of the case CHIEF JUDGE LeGRAND said: "In regard to such a case as this, it appears to us there ought to be no doubt on the mind of anyone as to what should be the decision on obvious principles of equity and common sense. It presents simply this question, whether a person may sell a thing to which he has no title, and recover the purchase money without transferring the title to the thing sold? It would seem

that the bare stating of the question is to resolve it in the negative. * * * The contract is an *unexecuted* one. In speaking of such an one, the Court in *Buchanan* v. *Lorman,* 3 Gill, 77, hold the following language which is conclusive of this case: 'A vendee of an estate in an unexecuted contract is entitled to have that for which he contracts, before he can be compelled to part with the consideration he agreed to pay.' " In conclusion the Court said: "We think the Circuit Court erred in not continuing the injunction to the whole claim." If the plaintiff had no title to the oyster lots in question, and did not convey them to the defendants, a Court of Equity would enjoin the collection of the writing obligatory sued on, and the third plea sets up a good equitable defense.

In order to establish this defense, it was necessary to show that the lots were located in the State of Virginia, and we see no objection to any of the questions objected to. It is a uniform practice in this State in the trial of criminal cases, in order to show the jurisdiction of the Court, to ask a witness where the crime was committed. The answer to such a question necessarily involves a knowledge on the part of the witness of the limits of the county or city within which the case is being tried. This character of evidence is not conclusive, of course, and it may be shown that the witness does not know the boundaries of the particular county or city. In 1 *Greenleaf on Ev.,* sec. 136 (13th ed.), the learned author says: "In matters of public right, all persons are presumed to possess that degree of knowledge which serves to give some weight to their declarations concerning them, because all have a common interest." The witness was properly allowed to state that he and the plaintiff resided in the State of Maryland, which necessarily involved some knowledge of the boundaries of the State. Upon the same principle he should have been permitted to answer the first, second and fourth questions. As a further ilustration of the numerous exceptions to the rule against hearsay evidence, a witness may testify to his own age. 1 *Ency. of Ev.,* 735.

It is said in 1 *Greenleaf on Ev.*, sec 430k: "In strictness, a person's belief as to his own age rests upon hearsay only, not on actual observation and recollection. Nevertheless, such belief, sufficient as it is for action in the practical affairs of life, ought also be admissible to judicial inquiries, and such is the conclusion generally accepted."

It is now the settled rule that boundaries may be established by hearsay testimony and by general reputation, and for that reason the evidence referred to in the third bill of exceptions was admissible. In the case of *Peters* v. *Tilghman*, 111 Md. 227, the Court said: "Defendants' fifth prayer permitted the jury to consider the evidence of the 'general understanding and reputation among the owners, neighbors and others who have been tenants or employes on the said respective lands as to which is the line between the plaintiff's and defendants' lands,' and we think there was no error in the legal proposition asserted." In *Tyson* v. *Shuey*, 5 Md. 540, "it was objected that the line, boundaries, and location of Greyhound Forest could not be established by general reputation, but the Court overruled the objection." In the case of *Clement* v. *Packer*, 125 U. S. 309, Mr. Justice Lamar quotes the statement of Mr. Justice McLean, in *Boardman* v. *Lessees of Reed*, 6 Pet. 328: "That boundaries may be proved by hearsay testimony is a rule well settled; and the necessity or propriety of which is not now questioned. Some difference of opinion may exist as to the application of this rule, but there can be none as to its legal force." See also 1 *Greenleaf on Ev.*, sec 128 (16 ed.); 2 *Ency. of Ev.*, 722-723.

For the reasons we have stated the judgment of the Court below must be reversed and the case remanded.

> *Judgment reversed, with costs to the appellants, and a new trial awarded*