SIDNEY LOBDELL, Respondent, *v.* NATHAN B. STOWELL, Appellant.

Where tenants in common of a quantity of grain agree to a division thereof and settle the portion belonging to one, the apportionment operates as a severance of the tenancy in common, and the one whose portion is thus allotted can, upon a demand and a refusal to deliver up the same, maintain an action for the conversion thereof against his former co-tenant having the property in his possession, although such portion was never in fact separated from the residue. The possession of the latter, after such severance, is simply that of bailee.

Plaintiff sued in Justice's Court for the conversion of a quantity of grain and obtained judgment, which was appealed. Upon trial in the County Court plaintiff was permitted to prove what had been the highest price of the grain between the time of conversion and the trial in the County Court. *Held,* no error; that the highest price up to the last trial was the proper measure of damages.

The case of *Matthews* v. *Coe* (49 N. Y., 57), distinguished and limited.

(Argued May 8, 1872; decided September term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the sixth judicial district, affirming a judgment in favor of plaintiff of the County Court of Chenango county. (Reported below, 37 How. Pr. R., 88.)

The action was originally commenced by the plaintiff before a justice of the peace to recover damages for the unlawful conversion of a quantity of corn and oats. Judgment was rendered on the trial of the issues therein for $74.95 damages and $3.75 costs against the defendant, who thereupon appealed to the County Court of Chenango.

The issues were again tried in that court, before the county judge and a jury, when the following facts were established:

The plaintiff in 1863 raised 191 bushels of corn and fifty-two bushels of oats on a part of the defendant's farm, worked by the plaintiff on shares. In the following March, each party having then used and sold a portion of the corn, and the plaintiff having also used some of the oats, it was agreed between them how that remaining undisposed of should be divided. By this agreement the plaintiff was to have forty-two and a half bushels of corn and fourteen bushels of oats as his share. The corn and oats had, by and with the consent of the defendant, been put in his barn, which he was in the habit of keeping locked, and the part which had not been previously used or sold, as above stated, remained therein after the said division was agreed on without an actual separation at any time of the quantity to which the plaintiff was entitled from the residue.

What subsequently occurred is testified to by the plaintiff as follows: "After this, about the first of April, I went there' and told defendant I came after the corn and oats, then locked up in his barn. He said I could not have it. I demanded the corn and oats of him."

The plaintiff then was permitted, against the exception of the defendant, to show what had been the highest price of corn and oats between the first of April, 1864, the day of the conversion, and the day of the trial in the County Court.

The defendant claimed that the rule of damages was either, 1st. The value at the time of conversion and interest, or the highest price between the conversion and the commencement of the suit in the Justice's Court; or, 2d. The highest price between the conversion and the trial in the Justice's Court.

On the close of the plaintiff's testimony the defendant's counsel asked for a nonsuit or dismissal of the complaint, on the ground that the plaintiff was not entitled to recover; claiming, 1st. That he had not made out a cause of action. 2d. That one tenant in common or joint tenant cannot sue his co-tenant in this form of action.

This motion was denied, and the defendant excepted. The jury, under the direction of the court, found a verdict for the plaintiff of $100, to which direction the defendant duly excepted. The General Term granted leave to bring the case to this court.

*Amasa J. Parker* for the appellant. The property owned in common was not divided, and the common-law rule as to an action of trover by one tenant in common against his co-tenant applies to this case. (*Tripp* v. *Ryley*, 15 Barb., 333; *Wharton* v. *Little*, 4 Mod.., 183; *Fennings* v. *Grenville*, 1 Taunt., 241; *Holliday* v. *Camsdell et al.*, 1 T. R., 658; *Fiero* v. *Betts*, 2 Barb., 633; *Farr* v. *Smith*, 9 Wend., 338; *Russell* v. *Allen*, 13 N. Y., 173; *Koningsburg* v. *Launitz*, 1 E. D. Smith, 215; *Tubbs* v. *Richardson*, 6 Vt., 447; *Willson* v. *Reed*, 3 J. R., 174; *Brazee* v. *Ansley*, 11 Iredell, 12; *Carr* v. *Dodge*, 40 N. H., 403; *Williams* v. *Nolan*, 34 Ala., 167; *Roston* v. *Morris*, 1 Dutch N. J., 173; *Keisel* v. *Everest*, 21 Penn., 9 Har., 90; *Seldon* v. *Hitchcock*, 2 Caines, 166; *St. John* v. *Standrig*, 2 J. R., 468.) Defendant did not do or say anything to make him liable. (*Gilbert* v. *Dickerson*, 7 Wend., 449; 15 Barb., 332; 22 id., 568.) The judge erred in deciding that plaintiff was entitled to receive the highest price between the conversion and the trial. (*Matthews* v. *Coe*, 49 N. Y., 57.)

*W. S. Sayre* for the respondent. Defendant's refusal to deliver the property to plaintiff makes him as liable as if he had sold or used or destroyed it. (*Channon* v. *Lusk*, 2 Lans., 211, 214; *Figuet* v. *Allison*, 12 Mich., 328.) An action at law was the proper remedy in this case. (*Dyckman* v. *Valiente*, 42 N. Y., 549; *Kimberly* v. *Patchin*, 19 id., 330, 332, 333; *Russel* v. *Carrington*, 42 id., 122; *Cole* v. *Reynolds*, 18 id., 76, 78; *Musson* v. *Trumpbour*, 5 Wend., 274; *Powell* v. *Noye*, 23 Barb., 184, 186.) The rule of damages adopted by the court is correct. (*Roman* v. *Van Allen*,

26 N. Y., 309–311; *Scott* v. *Rogers*, 31 id., 676; *Burt* v. *Dutcher*, 34 id., 493; *Wilson* v. *Mathewson*, 24 Barb., 295.)

LOTT, Ch. C. Conceding, as is claimed on behalf of the defendant, that the parties were tenants in common of the corn and oats which were raised by the plaintiff on the defendant's farm, and that, as a general rule, one tenant in common cannot maintain trover against his co-tenant without showing a loss, sale or destruction of the property held in common, that concession is not available as a ground for the reversal of the judgment appealed from.

It appears, from the evidence given on the trial, that after a portion of the grain had been used and sold, by each of the parties, it was mutually agreed between them how the portion remaining undisposed of should be divided. The manifest intention of that agreement was to give the plaintiff a certain specific quantity as his share of both the corn and oats with a right to take and hold it, without any further interest therein or claim thereto by the defendant. The portion to which he became entitled, although not in fact actually separated from the residue, was undistinguishable therefrom in quality and value, and could be ascertained with as much certainty by measure as if such separation had been made, and the plaintiff had the right to take it and hold it as his own separate property. The effect of that agreement was to vest the quantity so apportioned to the plaintiff in him individually, as effectually as a sale by both parties to a third person of a certain number of bushels either of corn or oats would have vested the title thereto in him as his absolute property. Although it still continued in the possession of the defendant, unseparated from that which was apportioned to himself, he held it all as affected and qualified by that agreement and subordinate to the rights resulting from and conferred by it. The apportionment operated as a severance of the tenancy in common which had previously existed, and changed the undivided into a divided ownership; the defendant thereafter stood in the relation of a bailee to the plaintiff as to his share.

After that apportionment the plaintiff went to the defendant and "demanded the corn and oats of him," to which he replied that the plaintiff could not have them. That demand evidently had reference to the portion only to which the plaintiff had in his undivided and separate right become entitled, and cannot be fairly construed as extending to the residue also. The grain was at that time locked up in the defendant's barn, and his refusal to accede to the plaintiff's demand and the terms in which it was made operated as an appropriation and conversion thereof to his own use and made him liable for the value thereof. These views are in accordance with the decision of the Supreme Court in *C. & J. Seldon* v. *Hickock* (2 Caines Rep., 166).

That was an action for trover for a specified and certain quantity of salt, based upon the following facts: The defendant and two other parties were joint owners of a cargo of sixteen hundred bushels of salt. Those two other persons being unable to pay their proportion of duties and charges, sold their shares to the plaintiffs by and with the consent and advice of the defendant, and on his promise that he would deliver that quantity to them. On a refusal by the defendant to make such delivery to the plaintiffs, after a compliance by them with the terms of their purchase, the action was brought, and a verdict being found for the plaintiffs for the value of the shares so sold to them, an application was made to set it aside and order a nonsuit to be entered.

It was claimed on behalf of the defendant that the plaintiffs under the sale to them by the two former owners were tenants in common with him, and therefore could not maintain an action of trover against him.

The motion was denied, and SPENCER, J., delivered the opinion of the court, and after stating that the defendant and the parties whose shares were purchased by the plaintiffs were tenants in common, and that one tenant in common cannot maintain trover against his co-tenant, unless the thing holden in common be destroyed, he referred to the facts attending the sale to the plaintiffs, and then said it was "a valid sale

and severed the tenancy in common." There was no actual division or separation of the quantity constituting the shares sold to the plaintiffs from that of the defendants, and yet they were permitted to recover its value as their separate and individual property.

That decision is sustained by those of *Kimberly* v. *Patchin* (19 N. Y., 330), and *Russell* v. *Carrington* (42 id., 122). They decide that upon a sale of a specified quantity of grain, its separation from a mass undistinguishable in quality or value, in which it is included, is not necessary to pass the title when the intention to do so is otherwise clearly manifested. Those decisions necessarily involved the principle that there may be a divided ownership, or different owners of separate quantities or portions of property divisible in its nature and ascertainable by measure or by weight or count, and are therefore confirmatory of the views above expressed by me. (See also the opinion of COWEN, J., in *McMurray* v. *Rawson*, 3 Hill, at foot of page 70, etc.)

It follows from what has been said that the plaintiff was entitled to recover on the grounds above stated, and it is unnecessary to decide whether he could have maintained his action independent of the agreement to which I have particularly referred, on a mere demand of his share of the defendant and a refusal by him to deliver it or permit the delivery thereof. I therefore refrain from an expression of an opinion on that question.

It then remains to be considered whether the court below erred in adopting, as the rule of damages, the highest price of grain between the time of conversion and the trial in the County Court.

That was declared to be the proper and true measure of compensation by the Court of Appeals in *Romaine* v. *Van Allen* (26 N. Y., 309), for the unlawful conversion of railroad stock. The question was there distinctly raised. The plaintiff insisted that he was entitled to recover the highest market value of the stock at any time intermediate the conversion and the close of the trial, and the defendant, on the other

hand, claimed that he was only liable for its market value at the time of the conversion and the interest. The conversion took place on the 19th day of November, 1860, and the action was brought on the 14th day of June, 1861. It was tried before a referee. The trial commenced on the 25th day of October, 1861, and was concluded on the 25th day of July, 1862, adjournments having been had, from time to time at the request of the plaintiff, on reasonable grounds. The full market price, at the time of the conversion, was $3,937.50.

The highest price, between that time and the commencement of the suit, was $5,475. It reached $5,962.50 when the trial commenced, and could have been sold before its conclusion at $8,175.

Those were the highest prices between the dates specified. The referee allowed the last named sum as the measure of damages. It will be seen by those different dates and the great fluctuation of prices, that the time, when the value of the stock as the rule of compensation to the plaintiff was to be determined, was very material, and the question was elaborately and ably discussed by ROSEKRANS, J., both on principle and authority, and he reached the conclusion that the rule of damages adopted by the referee was both just and correct, and the judgment entered on his report was affirmed. All the other judges (except MARVIN, J., who expressed no opinion) concurred with him.

The same question was again presented to the court in *Burt* v. *Dutcher* (34 N. Y., 493), which was an action for the wrongful taking and conversion of nineteen bales of hops. That action was also tried by a referee, who decided that the highest market value of the hops between the time of their conversion and the time of the trial was the measure of damages, and gave judgment in favor of the plaintiff. That judgment after affirmance by the Supreme Court was on appeal affirmed by the Court of Appeals by the unanimous decision of the court, DAVIES, Ch. J., and MORGAN, J., delivering opinions.

The same rule was again adopted by the Court of Appeals

in *Markham* v. *Jaudon* (41 N. Y., 235), which was an action for the wrongful conversion of railroad stock.

It must be assumed from the claims of the defendant as to the measure of damages in the case now under review, that the value of the grain in question was not fixed and determinate, but was variable and fluctuating; and under those decisions the rule adopted by the court was correct, and the only one he could prescribe.

It was claimed by the counsel of the appellant that the present Court of Appeals has overruled those decisions in the case of *Matthews* v. *Coe*, decided on the 26th of March, 1872, reported in 49 N. Y., 57. The opinion delivered by CHURCH, Ch. J., on rendering the decision therein, so far as relates to that question, has been submitted to us. It does not sustain the claim.

The learned judge, although expressing an unequivocal disapproval of the rule, accompanied with the remark that it is not regarded so firmly settled by authority as to be beyond the reach of review whenever an occasion shall render it necessary, says in conclusion: "It must suffice now, to decide that the rule, as applied to this case, was erroneous."

It is evident, therefore, that it was not the intention of the court to overrule the cases to which I have above referred as establishing and settling that rule, and as it is clearly applicable to the case under review, we consider it conclusive and obligatory on us.

The value of the grain in question had not been ascertained with definite certainty, but as there was no request to submit that question or any other fact to the jury, and the amount of recovery was fully sustained by the proof, the general exception to the direction of the court to find a verdict for the plaintiff for one hundred dollars was not sufficient.

Our conclusion, therefore, on the whole case is, that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.