# MOSES STRAUS *et al.*

*v.*

# FERDINAND MINZESHEIMER.

1. LAW AND FACT—*delivery and change of possession on sale.* If there is evidence tending to prove a delivery and change of possession of goods on a sale before the levy of an attachment, it is a question of fact for the jury to determine whether there was a delivery and change of possession, and not a mixed question of law and fact.

2. DELIVERY—*as against attaching creditor.* If a party purchase an entire lot of cigars of another, and the vendor, after receiving payment, takes the purchaser to the factory, and says: "Here are your cigars," handing to him several boxes, and the purchaser pays for the stamps to go upon the boxes, and employs the hands in charge of the factory to stamp them, in accordance with the laws of the United States requiring this to be done before removal, this, being as complete a delivery as the vendor can make, will be sufficient to pass the title as against an attaching creditor of the vendor.

3. SALE—*whether in violation of revenue laws of the U. S. requiring stamping.* A sale of a lot of cigars at the factory where made, before they are all boxed, or any of them stamped, and delivery of possession, will not be invalid between the parties, under the act of Congress imposing a forfeiture for selling, or offering to sell, cigars before they are boxed and stamped, where the contract of sale provides that they shall be stamped as the law requires, before their removal.

4. SAME—*when completed so as to pass title.* In a contract of sale, the title will pass to the purchaser, if such is the intention of the parties, although measuring or weighing is to be had at a subsequent time, in order to ascertain the amount to be paid.

5. If an entire stock of cigars is sold, the parties estimating them at a given number, for a fixed price, which is paid, and all is done that can be done to deliver possession at the factory where they are, the counting, boxing and stamping will not be necessary to pass the title as against an attaching creditor of the vendor.

6. INSTRUCTIONS—*should be based upon the evidence.* The want of evidence upon which to base an instruction is sufficient to justify its refusal. The evidence should be fairly sufficient to raise the question involved in the instruction.

7. SAME—*assumption of disputed fact.* An instruction which assumes the existence of a material disputed fact, is properly refused.

8.  ESTOPPEL—*acts must influence conduct of another.*  The silence of a party in asserting his claim of ownership, after a levy upon property has been made under an execution against another, will not estop him from afterwards asserting his rights, as his conduct in such a case does not induce the levy, by causing the officer to believe he is not the owner.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

This was a suit in trespass, brought by appellee, Minzesheimer, against appellants, to recover damages for the taking of 10,700 cigars, to which Minzesheimer claimed title under a purchase from one Regina Blumenthal, the cigars having been levied upon and sold by appellant Ayars, a deputy sheriff, under a writ of attachment in favor of appellants Strauss and Sawyer, against Regina Blumenthal and one Schloss, her partner.

The record shows the following facts:

In 1872, Minzesheimer was in partnership with J. W. Schloss and Regina Blumenthal, in the cigar business, in Chicago, under the firm name of F. Minzesheimer & Co.  This firm dissolved October 16, 1872, and the business was continued by J. W. Schloss and Regina Blumenthal, under the name of J. W. Schloss & Co.  The new firm became indebted to Strauss & Co. in the sum of about $800.  Regina Blumenthal lived in New York, and the business was conducted by Schloss, in Chicago.  Julius Blumenthal, husband of Regina, came to Chicago, acting under a power of attorney from his wife, and dissolved the firm, Blumenthal taking the assets and agreeing to pay the firm debts.  Blumenthal took charge of the firm assets, including cigars, tobacco and fixtures at store No. 39 South Canal street, and the cigars in controversy at factory No. 39 Waller street.  Blumenthal was to take charge of the cigars as soon as they could be packed and ready to be stamped. Before they were packed or stamped, and on the 2d of January, 1873, Minzesheimer claims to have bought the cigars of Blumenthal.  The alleged sale was made at 283 West Lake

street, a mile and a half from the cigars at 39 Waller street. Minzesheimer had never seen the cigars. He paid $428 for them, and received a written memorandum of the sale. Blumenthal was to deliver them January 4, 1873. He was a brother-in-law of Minzesheimer. On the morning of the 4th of January, Minzesheimer, who was to pay for the stamps, purchased them, and went, with his son and Blumenthal, to the factory, with two wagons. Blumenthal pointed to the cigars, gave Minzesheimer several boxes, saying: "Here are your cigars." Minzesheimer looked them over, and they began stamping. Schloss' foreman, in charge of the place, then offered to stamp them, with the aid of a boy, and have them completed by 4 o'clock, which was assented to, and Minzesheimer and Blumenthal then left. About 4 o'clock of the afternoon, Minzesheimer and Blumenthal came back, but, in the meantime, the levy had been made under the attachment writ, in favor of appellants Strauss and Sawyer, against Schloss & Co. Verdict and judgment were for plaintiff, and defendants appealed.

Mr. J. L. HIGH, for the appellants.

Mr. J. S. GRINNELL, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is assigned for error, that the verdict is unsupported by the evidence, and that the court erred in giving and refusing instructions.

It is claimed that the alleged sale of the cigars to Minzesheimer was invalid, as being fraudulent as against creditors.

We are entirely satisfied with the correctness of the finding of the jury in this respect. We do not see how they could, under the evidence, have found otherwise.

The sale is further claimed to be invalid, because there was no delivery of the cigars to Minzesheimer, and no change of possession.

This is the chief point of controversy.

We think it may be inferred, from the evidence, that 39 Waller street was the place where the firm of J. W. Schloss & Co. manufactured its cigars; that everything there belonged to that firm, although the license was taken in the name of J. W. Schloss; and that there was nothing at Waller street but these cigars, more than half of which were boxed.

On January 4, 1873, Blumenthal, having previously sold the cigars to Minzesheimer and received the pay, took Minzesheimer to the factory, at 39 Waller street, showed him the cigars, saying: "Here are your cigars," and handing to him several boxes of them. Blumenthal paid the employees at the factory. Schloss gave him an order for the revenue stamps, which was necessary because of the license being in the name of Schloss individually. Minzesheimer paid for and obtained the requisite stamps, and commenced the work of stamping the cigars. The foreman suggested that, as it would take some time to complete the stamping, he, with the boy there, would attend to it, and have them ready on Minzesheimer's return in the afternoon. Minzesheimer gave the foreman a dollar to purchase some bay rum, with which to flavor the cigars.

During Minzesheimer's absence, the cigars were attached. Both Schloss and Blumenthal had done all they could do to complete the delivery of the property to Minzesheimer. The evidence fails to show that, after the alleged delivery to Minzesheimer, they exercised any control over the cigars, or were in possession thereof. Minzesheimer had commenced to stamp the cigars, and left an agent to complete the same. He would seem to have been the ostensible, as well as real, person in possession.

True, the cigars had not been actually removed, but this could not have been done before stamping, without violating the Revenue Law. Everything had been done, so far as respected the rights of the parties, as between themselves and their power to do so, to vest the complete title in, and to

perfect the delivery to, Minzesheimer.   The stamping required before removal, concerned alone the United States government, and that Minzesheimer undertook to do.

We think, from such facts, it is not to be asserted that the jury were not warranted in finding that there was a delivery of the cigars to the vendee, and a change of possession.

The objection taken to the instructions given for the plaintiff is, that they assume that the question of delivery is solely a question of fact for the jury, whereas it is a mixed question of law and fact; and that where, as in this case, the facts show no immediate, continuous or exclusive change of possession, the court should have instructed the jury that the title had not passed as to creditors.   But this is on what we regard as a mistaken assumption.   We find that there was evidence tending to show a delivery and change of possession.   In such case, it is for the jury to determine, from the evidence, whether they occurred or not.

It is objected that there was error in refusing these three instructions, asked by defendant :

" 1.   The jury are instructed that, under the Revenue laws of the United States, Blumenthal could not lawfully sell, nor could the plaintiff lawfully buy, the cigars in question, until they were properly boxed and stamped with the United States revenue stamps, as provided by law, and that any sale or attempt to sell the cigars until so boxed and stamped, rendered the cigars liable to forfeiture to the United States, and the parties liable to a fine of not less than $100 nor more than $1000, and to imprisonment not less than six months nor more than two years.

" 2.   If the jury find, from the evidence, that the alleged sale of the cigars by Blumenthal to plaintiff was made with a view to defraud or hinder the creditors of J. W. Schloss & Co., and that the plaintiff knew, or had reasonable cause to know, of such intention, then the plaintiff, as against such creditors, could acquire no title to the cigars, even had he

obtained possession and control thereof, and the defendants were justified in taking the same under the proceedings in attachment.

"3. The fact that the cigars in question, at the time of the sheriff's levy, were found at the factory of J. W. Schloss, one of the defendants in the attachment, and under his control, affords a strong presumption against their ownership by plaintiff, which presumption must be overcome by satisfactory evidence that the title and possession had passed to plaintiff by a *bona fide* sale, before the levy of the attachment, in order to entitle plaintiff to a recovery in this action."

The first instruction we regard as inapplicable here. It was drawn in view of the act of Congress of July 20, 1868, which provides for a forfeiture to the United States of all cigars which shall be sold or offered for sale, not properly boxed and stamped, and imposes a penalty therefor. It was not here contemplated that the cigars should be sold without being boxed and stamped, but it was a provision of the contract, that they should be stamped. It was the intent that they should be stamped before removal, and Minzesheimer was in the course of stamping them preparatory to their removal, when they were attached. Under such circumstances, we can not think that the relative rights of the parties are to be affected by this act of Congress, so as to invalidate, as between themselves, their contract of sale, because of a supposed violation of the act.

As regards the second refused instruction, without entering upon any discussion of its correctness, abstractly considered, we find it sufficient to say, that, in our opinion, the court was justified in its refusal to give it, on the ground, if no other, of the want of evidence upon which to base the instruction. From an examination of the testimony, we fail to discover enough of evidence that the sale was made with a view to hinder or defraud creditors, and still less that the purchaser knew of any such intention, to fairly raise a question in those respects, and make the instruction applicable to the facts.

32—78TH ILL.

It was enough to condemn the third refused instruction, that it assumed the fact that the cigars were found under the control of J. W. Schloss. That was a disputed fact, and the jury should have been left free to find upon it.

It is further urged, that the court erred in its modification of the following instruction, asked by the defendants:

" 3.   It is a well settled rule of law, that, in sales of personal property, when anything remains to be done to complete the contract, such as ascertaining quantity or delivering possession, the title does not pass until these things are done, and if the jury are satisfied, from the evidence, that the cigars in question were in such condition, at the time of their alleged purchase by plaintiff, that something material to the contract, such as *counting, boxing, stamping, or* delivery of possession, remained undone, then, as against creditors, the title could not pass to plaintiff, and defendants are entitled to a verdict."

The words appearing in italics, viz: "counting, boxing, stamping, or," were stricken out by the court, and the instruction then given.

Counting was not necessary.   Minzesheimer had purchased *all* the cigars at the factory.   The amount paid, $428, was based upon the number, 10,700.   There was no counting to be done, no separation from stock on hand.   The boxing and stamping were not with a view to the interest of either of the parties under the contract of sale.   They concerned the interest, solely, of the United States government.   The stamps had already been purchased by Minzesheimer, to be affixed, and the requirement. of government virtually answered.

The authorities as to when title to personal property passes on sale, where something remains to be done to the property, are not entirely harmonious.   There are numerous most respectable authorities which hold that a contract for the sale of specific goods, or of goods identified, where something remains to be done to the property, will pass the title to the

property before the act be done, if such appears, by the contract, to have been the intention of the parties.

In consonance with this class of authorities, this court held, in *Graff* v. *Fitch*, 58 Ill. 374, and in *Shelton* v. *Franklin*, 68 Ill. 333, that the title to personal property would pass by a contract of sale, where such was the intention of the parties, although measuring or weighing was to be had at a subsequent time, in order to ascertain the amount to be paid.

The cigars here had been paid for; everything had been done which it was possible, under the circumstances, to do, to change the possession and make the title complete in the vendee, and there can be no doubt, from the evidence, that the parties intended an absolute transfer, and to make the sale complete and absolute, although the stamping of a portion of the cigars remained to be afterward done for government purposes only.

In view of the facts, we perceive no error in the modification of the instruction.

The point is made that Minzesheimer is, by his own conduct, estopped from a recovery. The conduct claimed as having such effect is, that Minzesheimer, on his return to the factory, made no assertion of his title or ownership of the property, and did not even speak to the sheriff, whereas he should have made assertion of his title, and warned the sheriff of the consequences of taking his property.

But when Minzesheimer returned to the factory, he found the sheriff had already attached the cigars. He did not, by any conduct, induce the sheriff to make the attachment, nor did he quietly stand by and acquiesce in the making of the levy. It had been made before, in his absence. The cigars were attached on Saturday, the 4th. On Monday, the 6th, Minzesheimer tried to find the sheriff, and failed in finding him every day for about a week, when he saw him and demanded the cigars. He also, at the same time, demanded them of Strauss & Sawyer. We do not perceive that he assisted to deceive any one, or that he influenced any one, by

his acts, to believe any other person owned the property except himself. We see no foundation for the claim of any estoppel.

The judgment will be affirmed.

*Judgment affirmed.*