### Hoffman vs. King.

*September 28 — October 23, 1883.*

*Sale of Chattels — Delivery.*

1. To constitute a delivery or a good .offer of delivery of chattels sold they must be set apart so that possession can be taken by the purchaser without any further act on the part of the seller, except in the case of such articles as wine, oil, or grain of common quality, and as are incapable of identification. .
2. By a contract for the sale of a certain quantity of merchantable lumber, such lumber was " to be delivered on skids at end of mill, assorted in lengths, but not in sizes, except as to boards, plank, and other dimension, if any, smaller than four-inch by four-inch, all of which last-described kinds shall be piled separately, each kind by itself;" and the vendee agreed "to keep said lumber from accumulating on said skids." *Held*, that the vendor was required to deliver on the skids the lumber called for by the contract, so assorted and separated from any lumber of inferior quality or of other dimensions as to be capable of identification.

APPEAL from the Circuit Court for *Jackson* County.

Replevin for a quantity of lumber delivered under a contract for the sale thereof to the defendant. The case is sufficiently stated in the opinion. The appeal is from a judgment in favor of the plaintiff.

For the appellant there were briefs signed by *L. P. Powers*, as attorney, with *Gardner & Gaynor*, of counsel, and oral argument by *Mr. Gardner.*

Hoffman vs. King.

For the respondent the cause was submitted on the brief of *Johnson & Ainsworth.*

ORTON, J. The contract is 'that the respondent sells to the appellant, and agrees to deliver to him at a certain mill, 1,000,000 or more feet of merchantable pine lumber, to be cut and sawed into certain lengths and sizes or dimensions as directed from time to time by the appellant,— the length to be within twelve and forty feet; three per cent. of it to be forty feet in length, and seventeen per cent. between twenty-four and forty feet in length. "Said lumber to be cut into timber and dimensions principally, and to be delivered *on skids at end of mill, assorted* in lengths, but not in sizes, except as to boards, plank, and other dimension, if any, smaller than four-inch by four-inch, all of which last-described kinds shall be piled *separately,* each kind by itself." There had been delivered "on the skids at end of mill" 359,421 feet, and carried away by appellant, and the instalment due within thirty days after delivery had been paid, and the balance was not due until the completion of the contract. The appellant had suffered some inconvenience and damage in assorting out the lumber of the quality and kinds required by the contract from "culls" and other damaged and inferior lumber piled with it promiscuously on the skids, and refused to receive any more of the lumber required by the contract, unless separated from other kinds of lumber, and thereupon the respondent rescinded the contract on his part and gave notice thereof to the appellant, and refused to deliver any more of said lumber, and has brought this suit in replevin for the lumber delivered, and which was not already paid for, and was not to be paid for until the contract was fulfilled, under a clause of the contract which continued in the respondent the title of the property until paid for.

There was much evidence tending to prove that the lum-

ber called for by the contract was mingled on the skids with other and inferior lumber when the appellant refused to receive the same. The learned counsel of the respondent contends that by the terms of the contract he was not required to deliver such merchantable lumber, and of such sizes, quality, and dimensions required by the contract, *separated* from other and inferior qualities of lumber, on the skids of the mill, but that the contract imposes on the appellant the duty and labor of the separation thereof; and the learned counsel of the appellant contends that the contract requires the respondent to deliver the quality and sizes of the lumber required by the contract, on the skids, separated and apart from such other and inferior kinds and qualities of lumber.

The construction of the contract in this respect is the main question in the case, and which determined the action of both parties. There are many other questions of law discussed in the briefs of the learned counsel very interesting and important in a proper case, but this is really the only material question in this case, and so the learned judge before whom the cause was tried evidently regarded it, and in his instructions to the jury places upon the contract the following construction as to this question: "The contract provides that the defendant shall keep the lumber agreed to be purchased away from the skids, so as not to interfere with the running of the mill. There is no mention made in the contract of culls, and no agreement on the part of plaintiff to separate the culls from the merchantable lumber. He was, therefore, under no obligations to do so, but it became the duty of the defendant to remove from the common pile, as it was run out of the mill, all the merchantable lumber in time to prevent any serious inconvenience in running the mill." We are compelled to differ from the learned judge in such a construction of the contract. The delivery of the lumber of the proper quality, sizes, and dimensions

was to be on the "skids at end of mill." The language of the contract, that even the proper quality, sizes, and dimensions of the lumber called for by it must be "*assorted* in lengths, but not in sizes, except as to boards, plank, and other dimension, if any, smaller than four-inch by four-inch, all of which last-described kinds shall be piled *separately*, each kind by itself," makes great weight in its construction. Such an assortment and separation could not be made by an intermingling of these various sizes and dimensions with lumber of various sorts and qualities not within the contract. But the plain language of the contract, for the delivery of merchantable lumber in a particular place, of specified dimensions, size, length, etc., implies that it should be assorted and separated by the respondent on the skids, ready for acceptance or rejection when called for. How could the appellant know what lumber on the skids was intended or offered by the respondent for delivery under the contract? He might well assume that the respondent intended all of it, "good, bad, and indifferent," as delivered under the contract.

There should be such an offer of delivery by one party that the other party could intelligently accept or reject it, without anything required to be done by him involving delay, labor, and expense. This proposition is too evident for argument. Would it be a good offer to deliver a certain quantity of merchantable wheat in a certain bin in a warehouse, mingled with chaff and inferior qualities and other kinds of grain, and must the purchaser be at the delay and expense of its separation? In respect to anything which is susceptible of being mingled with that which is not called for by the contract, of the same general kind but of inferior quality, and of different sizes and dimensions, there must be a delivery, or offer to deliver, the specific kind and quality required.

In this contract the appellant was required to use expe-

dition and dispatch in keeping the skids clear of the lumber called for, so as not to delay the mill. This would imply that the merchantable lumber of the particular sizes and dimensions should be ready on the skids for immediate removal by him at any time. In such case there should be a setting apart of such lumber as the respondent claimed to come within the contract, and a separation or distinct ascertainment by mark or otherwise. This was held to be required by this court in a case where the property to be delivered was a reaper of a certain description and many reapers of the exact description were at the place of delivery, but all of them in parts to be put together, and no one particularly set apart and designated as the one to be delivered. *Ganson v. Madigan*, 15 Wis., 144. See, also, 2 Parsons on Con., 484. To constitute a delivery of chattels sold, the articles must be set apart so that possession can be taken by the purchaser without any further act on the part of the seller, except in the case of such articles as wine, oil, or grain of common quality, and as are incapable of identification. *Kimberly v. Patchin*, 19 N. Y., 333; *Ward v. Shaw*, 7 Wend., 404; *Downer v. Thompson*, 2 Hill, 137; 2 Parsons on Con., 160; 2 Kent's Comm., 496; *Veazy v. Harmony*, 7 Greenl., 91; *Isherwood v. Whitmore*, 11 Mees. & W., 347; *Avery v. Stewart*, 2 Conn., 69.

We are of the opinion that the contract required the respondent to deliver on the skids the merchantable lumber called for by the contract, so assorted and separated from any lumber of inferior quality or of other dimensions as to be capable of identification, and the kinds of lumber of a merchantable quality set apart and separated from the common lot as required by the contract, and until this was done there was no sufficient offer to deliver so as to place the appellant in default for not accepting and carrying it away.

It follows, of course, that in this case there was no good cause or legal ground for the rescission of the contract, and

for retaking the lumber already delivered, the payment for which was not due until the completion of the contract. The respondent was clearly in default in not delivering the lumber according to his contract, and ought not to have recovered in this action on the evidence and instructions of the court to the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.