·F. B. Nash, Jr., *vs.* L. L. Brewster.

December 21, 1888.

**Sale—Seed-grain Note—Definite Quantity of Wheat in Larger Mass —Delivery.**— Where, upon a *bona fide* sale of seed-wheat, to be sown on the land of the purchaser, the amount of wheat specified in the seed-grain note or contract given therefor was contained in a particular bin containing a larger quantity, all of the same quality and value, out of which it was agreed the purchaser was then and there entitled to take away the number of bushels purchased, *held* sufficient evidence of a sale and delivery of the wheat at the date of the note, as between the maker and payee. Weighing or measuring is not absolutely essential to a completed sale except when necessary to define the subject-matter.

**Seed-grain Note—Lien on Crop—Failure to Sow Entire Quantity of Seed.**—And where the seed-grain described in such note or contract is actually and in good faith sold and furnished to the maker of the note for seeding purposes, pursuant to the agreement of the parties, and a portion of the amount received is subsequently sold or otherwise appropriated by him, and not sown upon the land designated, that fact will not defeat the lien of the seller, under the statute, for the price of that portion of such seed-grain actually sown upon the land, upon the crop grown therefrom.

**Same—Conversion of Crop by Subsequent Lien-holder.**— The statute authorizes the holder of a seed-grain note, upon condition broken, to take possession of the crop raised from the seed for which it is given, and the holder thereof may in such case enforce his lien as against the holder of a subordinate lien thereon, who has taken possession, and may maintain an action against him for the conversion thereof.

   *Kelly* v. *Seely*, 27 Minn. 385, distinguished.   [Rep.

   Plaintiff brought this action in the district court for Grant county, to recover for the alleged conversion of wheat by the defendant. After trial before *C. L. Brown,* J., and a jury, and verdict for plaintiff, the court, being of the opinion that the case is controlled by *Kelly* v. *Seely,* 27 Minn. 385, granted a new trial, from which order the plaintiff appeals.

   *Parsons & Brown,* for appellant.

   *R. H. Marden* and *Geo. Ketcham,* for respondent.

VANDERBURGH, J. The seed-grain note described in the complaint, upon which a recovery is sought by the plaintiff, contains the requisite statutory provisions, and was filed in the proper office on the day of its date. Lovejoy, the maker of it, occupied the premises therein described under a lease from the owner, one Toombs, and bought the wheat to sow thereon. He actually and in good faith purchased the 200 bushels mentioned, at 75 cents per bushel, and the evidence tends to show that he sowed 120 bushels of the same upon the land upon which the crop in dispute was raised, and of the balance he exchanged, with plaintiff's consent, 60 or 70 bushels with defendant for other seed-wheat of a different kind, which it was expected would ripen earlier, and which was also sown, and the rest was otherwise used by him. Plaintiff recovered a verdict for $90 and interest in this action, which is in form for a conversion of the wheat grown on the land from the seed so purchased, and appeals from the order setting it aside.

1. Lovejoy sowed the wheat and caused it to be harvested. After it was stacked, Toombs took possession of it under the stipulation in his lease giving him a lien on the crops raised on the land, caused the same to be sold, and it was bid off by the defendant, and was thereafter threshed and put into Toombs' granary. Both Toombs and the defendant denied the plaintiff's right to the wheat or the proceeds, and their testimony shows that they appropriated the same with full knowledge of plaintiff's rights and claims, and assert a prior and superior claim of title thereto under the foreclosure, which is set up as an affirmative defence in the answer; and it sufficiently appears that a demand by plaintiff would have been unavailing, though he swears that he made it. Under the statute the plaintiff was authorized to take possession of the grain upon which the lien was given, for the purpose of enforcing the same, and we think the evidence in the case amply sufficient to show a coversion of the same by defendant.

2. There is also evidence tending to show that Toombs waived his lien in favor of the plaintiff before the wheat was sold and delivered to Lovejoy, and it is not claimed that Brewster, who bought the wheat as a favor to Toombs, occupied any better position than the

latter. Toombs admits that he asked the plaintiff about seed-wheat for Lovejoy, and informed him that he had rented him his farm, and he helped haul the wheat away, knowing it was furnished for seed; and the plaintiff testifies that Toombs requested him to let Lovejoy have the wheat, and represented that the latter could give him a first lien on the crop, and that he let Lovejoy have the wheat with the understanding that his lien for the seed was first. The court charged the jury that the plaintiff's lien was first if the seed was actually sown, and to this no exception was taken by the defendant's counsel, and the rejected instructions asked by them did not embrace the same proposition. It is unnecessary to decide in this case, therefore, the question whether the lien for seed-grain takes precedence of a provision in a lease in the nature of a mortgage upon the crops to be subsequently raised on the land, made before the purchase of the seed.

3. The principal questions, however, argued in this court, and those upon which the case turned in the court below on the motion for a new trial, are whether there was a compliance with the statute as respects the delivery of the seed-wheat to Lovejoy, and the use thereof in seeding, so as to give effect to the seed-grain note as a lien on the crop. It is claimed that the seed was not furnished until after the execution of the note, because the 200 bushels therein described were a part of a larger quantity stored in the same bin, and were not separated or hauled away at the time. It is held in *Kelly* v. *Seely*, 27 Minn. 385, (7. N. W. Rep. 821,) that the contract must be executed, and the sale completed, at the time the note is given. We have no doubt that upon the evidence, and for the purposes of the contract, the sale in this case must be deemed completed at the time of the execution of the note, and that, as between the parties, at least, the title passed. The transaction appears to have been *bona fide*, and the evidence, which was uncontradicted, tended to prove that the wheat in the bin, of which the 200 bushels were a part, was all of the same kind, and Lovejoy had the same right to take that amount from the bin, and remove it, as he would if it had been separated. He was given permission to haul it away by the load, and the plaintiff was in the mean time to be the bailee of the same. It

was unnecessary to put the parties to the extra trouble of handling it twice in the granary, or to remove it all in one day. The evidence was sufficient to warrant the jury in finding that it was the intention of the parties that the title should presently pass, and in such cases it is a question of intention to be gathered from the circumstances. Weighing or measuring is not absolutely essential to a complete sale, except when necessary in order to define the subject-matter. *Winslow* v. *Leonard*, 24 Pa. St. 14. It might be more conclusive or satisfactory, but, if the evidence was sufficient to show the intention of the parties, and the vendee had the absolute right to take away the amount sold at the time, it is sufficient. *Burrows* v. *Whitaker*, 71 N. Y. 291; *Hatch* v. *Oil Co.*, 100 U. S. 124. Accordingly, though the authorities are not uniform, we think the rule is quite well established that, upon a sale of a specific quantity of grain, its separation from a mass, indistinguishable as to kind, quality, or value, of which it is a part, is not necessary to pass the title, where the intention to do so is otherwise made manifest. *Kimberly* v. *Patchin*, 19 N. Y. 330, (75 Am. Dec. 334;) *Russell* v. *Carrington*, 42 N. Y. 118; *Lobdell* v. *Stowell*, 51 N. Y. 70; *Chapman* v. *Shepard*, 39 Conn. 413; *Hurff* v. *Hires*, 40 N. J. Law, 581–586.; 6 Am. Law Rev. 450–458; 2 Schouler, Pers. Prop. § 258; 1 Benj. Sales, (Corbin's Notes,) § 395, etc. It was competent for the parties to make themselves tenants in common of the wheat in a particular bin by the sale of a part, and in such case the plaintiff might sever and take his own at any time. His legal rights were as well defined and complete as if his portion had been measured out and placed in a separate bin on plaintiff's premises, and in his care. *Channon* v. *Lusk*, 2 Lans. 211. Of course the rule above stated would not apply where the basis for it is wanting; that is to say, except where the mass is ascertained, and is of uniform quality and value.

4. It is also contended that the exchange of a portion of the 200 bushels by the vendee, and his failure to sow the amount named in the note, were fatal to his lien under the rule established in *Kelly* v. *Seely, supra*. But in that case the transaction appeared to be fraudulent. The note did not express the amount delivered or sold, as the statute required, and "none was to be furnished or received until after

the execution of the note, and nearly half of it (at least) was not furnished or received at all. The amount of wheat stated in the note was, then, never furnished or received, and consequently the note does not state the amount furnished or received." But that is not this case. Here the sale was made and note given in good faith. The note does express the amount sold and received, and there was, as we have seen, a sufficient delivery of the grain at the time the note was given. Of course, the vendor ran the risk of a subsequent diversion of it to other purposes. But the fact that by mutual agreement a part of it was exchanged for other seed-wheat, which took the place *pro tanto* of the amount exchanged therefor, did not render the contract of no effect. As the plaintiff on this appeal only claims a lien upon the product of the identical wheat delivered and sown, we are not called upon to decide the question whether his lien also extended to the crop raised from the wheat substituted for that furnished by him. We are satisfied, however, that the mere fact that the vendee failed to sow the entire quantity purchased did not deprive plaintiff of his lien upon the crop grown from that portion of seed sold and actually sown. Otherwise, miscalculation as to the amount needed, or destruction or waste of some of the seed furnished, might destroy the security for the whole.

This case does not fall within the rule in *Kelly* v. *Seely*, as properly understood and applied, and the verdict is amply supported by the evidence.

The order granting a new trial is reversed, and the case is remanded, with directions to render judgment for plaintiff upon the verdict.