CANADIAN NORTHERN RY. CO. v. NORTHERN MISSISSIPPI RY. CO.

(Circuit Court of Appeals, Eighth Circuit. December 11, 1913.)

No. 3,890.

*(Syllabus by the Court.)*

**1. CONTRACTS (§ 147*)—CONSTRUCTION—INTENTION OF PARTIES—ENTIRE CONTRACT EVIDENCES.**

The intention of the parties at the time the contract is made determines its interpretation, and that intention must be deduced not from any part of it, or from the agreement without any part, but from every part so construed as to be consistent with every other part and with the entire contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

**2. SALES (§ 218½*)—CONTRACT—TITLE TO PROPERTY—BILL OF LADING.**

A bill of lading wherein the vendor is named as consignee, accompanied with a draft in his favor for the purchase price of the property, is almost conclusive evidence that the parties intended that the title and ownership of the property should remain in the vendor until the purchase price was paid. And when the bill of lading contains or is accompanied with an order that the property described therein shall not be delivered without a surrender of the bill of lading, compelling evidence is required to establish a counter intention.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 586, 587; Dec. Dig. § 218½.*]

**3. SALES (§ 202*)—CONTRACT—TITLE OF PROPERTY.**

A contract of sale of personal property, which declares that the vendor hereby sells and conveys property in consideration of $39,000 to be paid from time to time on the surrender of order bills of lading in the name of the vendor of shipments of parts of the property accompanied by drafts for the agreed payments for such parts, respectively, and which contains a final stipulation that when the entire $39,000 has been paid the remaining property shall thereupon and thereafter become the property of the vendee, is a contract of sale for cash, and the title and ownership of each part of the property remains in the vendor until the purchase price thereof is paid in cash.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 542–551; Dec. Dig. § 202.*]

**4. ESTOPPEL (§ 52*)—"EQUITABLE ESTOPPEL."**

One who by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and the latter rightfully acts on such belief so that he would be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped from making such denial.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 121–125, 127; Dec. Dig. § 52.*

For other definitions, see Words and Phrases, vol. 3, pp. 2497–2508; vol. 8, p. 7655.]

**5. ESTOPPEL (§ 97*)—EQUITABLE ESTOPPEL—SALES—PURCHASE FROM BUYER.**

A vendor who made a contract of sale of personal property for cash to be paid on or before the delivery of each shipment thereof, which provided that its vendee should remove the property from the ground, load and ship it in the vendor's name, wrote a letter to its agent to the effect that it had sold the property to its vendee, and in that letter directed its

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agent to deliver the property to the vendee. A purchaser from the vendee saw this letter in the hands of the agent.

*Held*, the letter was insufficient to evidence an estoppel of the vendor from proving and enforcing against the purchaser from its vendee the terms of its contract of sale because the letter disclosed no intention to deceive and no culpable negligence toward that purchaser.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 289; Dec. Dig. § 97.*]

6. ESTOPPEL (§§ 71, 75*)—EQUITABLE ESTOPPEL—STATEMENT—SILENCE—SALES.

A statement by the vendor to the purchaser from such vendee that the vendor had no claim or interest in the property sold, when the fact was that the purchase price had not been paid and the vendor held the title to the property, was sufficient to estop the vendor from proving any title or interest in the property to the damage of the purchaser who acted upon that statement.

But the silence of the vendor, or its mere statement that it had sold the property, was insufficient foundation for such an estoppel, because neither evidenced any intention to deceive or any culpable negligence toward such purchaser.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 173–182, 192–195; Dec. Dig. §§ 71, 75.*]

In Error to the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Action by the Northern Mississippi Railway Company against the Canadian Northern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

H. V. Mercer, of Minneapolis, Minn. (Hector Baxter, of Minneapolis, Minn., on the brief), for plaintiff in error.

William A. Tautges, of Minneapolis, Minn., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges.

SANBORN, Circuit Judge. This is an action against the Canadian Northern Railway Company, which will be called the "defendant," for the value of certain rails and fasteners which it transported under bills of lading which specified the Northern Mississippi Railway Company, the plaintiff below, as consignor and as consignee, and stipulated, as to each carrier thereof over any portion of the route designated therein, that every service performed thereunder should be subject to the conditions specified in the bills of lading and that surrender of the bills properly indorsed should be required before delivery of the property. The ground of the recovery was that the defendant delivered the property to third parties without requiring a surrender of the bills of lading and refused to deliver it or to pay its value to the plaintiff, the consignee named in and the holder of the bills. The defenses were that the defendant delivered the property to the true owners, Shaw Bros., whose title was superior to that of the plaintiff, that the bills of lading were fraudulently issued to the knowledge of the plaintiff, and that the plaintiff was estopped by its words and acts from asserting any title to or ownership of the property as against Shaw Bros. and the defendant. At the close of the trial the court instructed the jury that there was no substantial evidence to sustain the first and second defenses and

submitted the question of the estoppel to them for decision. They returned a verdict for the plaintiff.

The true construction of a certain contract of sale of property, of which that transported under the bills of lading was a part, determines the validity of the first defense to this action. If the effect of that contract was to transfer and vest in the vendees the title and ownership of the property it described at the time the contract was made, the defense may be sustained. If that was not the effect of the contract, the defense must fail. That contract was made on January. 6, 1911, between the plaintiff, the owner of the property described therein, and the Jones Purchasing Agency, who sold and transferred all their right to and interest in the property to Shaw Bros. The provisions of the contract material to the question of title are that the parties to it agree that in consideration of $39,000 to be paid to the plaintiff as therein provided the plaintiff hereby sells and conveys to the agency certain rails, fasteners, locomotives, engines, cars, and railway equipment constituting a logging railroad, that the agency would pay $10,000 of the $39,000 in ten days by depositing it in the St. Anthony. Falls Bank, that this $10,000 should be retained by the bank and paid to the plaintiff as the last payment on the purchase price of the property, that the agency should take possession of and remove the property from the right of way and load and ship it in the name of the plaintiff at the expense of the agency, that the plaintiff should draw drafts on the agency for the specified value of each shipment accompanied with bills of lading thereof, that the bank should collect and retain the proceeds of these drafts for the plaintiff until those proceeds and the $10,000 deposited with the bank should aggregate $39,000, and that upon the payment in this way of the entire $39,000 "all the remaining property hereinbefore described shall thereupon and thereafter become and be the property of said Jones Purchasing. Agency and subject to their orders."

[1] The parties to this contract had the right and the power to make such an agreement of sale that the title and ownership of this property should vest in the vendees the instant the parties signed the agreement, and they had the right and the power to make such an agreement of sale that the title and ownership of no part of the property would pass from the vendor until the vendees had paid in cash for that part of the property. Which of these agreements have they made? The intention of the parties at the time their minds met upon the terms of the agreement must answer this question, and that intention must be deduced from the written agreement, the evidence in this case, and these established rules of law.

Under a contract of sale of personal property on credit, the title and ownership of the property vests in the vendee when the contract is signed and delivered, in the absence of evidence to the contrary. Leonard v. Davis, 66 U. S. (1 Black) 476, 483, 17 L. Ed. 222; Hatch v. Oil Co., 100 U. S. 124, 135, 136, 25 L. Ed. 554; Nash v. Brewster, 39 Minn. 530, 532, 41 N. W. 105, 2 L. R. A. 409; Case Rail v. Little Falls Lumber Co., 47 Minn. 422, 424, 50 N. W. 471; Arkansas Valley Land & Cattle Co. v. Mann, 130 U. S. 69, 74, 9 Sup. Ct. 458, 32 L. Ed.

854. Under a contract of sale of personal property for cash the title and ownership of the property remains in the vendor until the purchase price is paid in cash. National Bank of Commerce v. Burlington & N. R. Co., 44 Minn. 224, 231, 46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. Rep. 566.

[2] A bill of lading wherein the vendee is named as consignee, accompanied with a draft on him in favor of the vendor for the purchase price, is evidence that the parties intended the sale to be for cash and that the title and ownership of the property should not be transferred to or vested in the purchaser until the purchase price of it was paid. Greenwood Grocery Co. v. Canadian County Mill & Elevator Co., 72 S. C. 450, 52 S. E. 191, 2 L. R. A. (N. S.) 79, 110 Am. St. Rep. 627, 5 Ann. Cas. 261. A bill of lading wherein the vendor is named as consignee accompanied with a draft in his favor for the purchase price of the property is almost conclusive evidence that the parties intended that the title and ownership of the property should remain in the vendor until the purchase price was paid, and, when the bill of lading is accompanied with an order that the property shall not be delivered without a surrender of the bill of lading, the proof of that intention becomes so convincing that compelling evidence is required to overcome it. Dows v. National Exchange Bank, 91 U. S. 618, 631, 632, 23 L. Ed. 214; Portland Flouring Mills Co. v. British & F. M. Ins. Co., 130 Fed. 860, 864, 65 C. C. A. 344; Freeman v. Kraemer, 63 Minn. 242, 246, 247, 65 N. W. 455; Greenwood Grocery Co. v. Canadian County Mill & Elev. Co., 72 S. C. 451, 454, 52 S. E. 191, 2 L. R. A. (N. S.) 79, 110 Am. St. Rep. 627, 5 Ann. Cas. 261; Norfolk & Western Ry. Co. v. Sims, 191 U. S. 441, 448, 24 Sup. Ct. 151, 48 L. Ed. 254.

[3] The provisions of the agreement between the vendor and vendee in this case that $10,000 of the purchase price should be deposited within ten days as the last payment on the purchase price of the property, that the vendees should remove and ship the property at their expense in the name of the vendor, and that the vendor should draw drafts in its favor accompanied with the bills of lading in its name for the value of each shipment, made it impossible for the vendees, without a violation of the contract, to obtain the use or benefit of any of the property until they paid for it in cash, and present almost conclusive evidence of the intention of the parties that the sale should be for cash and that the title and ownership of every part of the property should remain in the vendor until the vendees paid for it in cash, and the concluding stipulation of the agreement on this subject to the effect that after the entire $39,000 was paid, and not before, "all the remaining property hereinbefore described shall thereupon and thereafter become and be the property of said Jones Purchasing Agency and subject to their orders," removes every lingering doubt that such was their intention. If it had been their intention and the effect of their contract that the title to the property should pass to the vendees when the contract was made, the title to this remaining property would have passed at that time and this stipulation would have been idle. But every provision of an agreement should have effect rather than that part should perish by construction and the intention of the parties to a contract must be deduced, not from

specific provisions or fragmentary parts of the agreement, but from the entire contract, because the intent is not evidenced by any part or provision of it, nor by the contract without any part or provision, but by every part and term so construed as to be consistent with every other part and with the entire contract. United States Fidelity & Guaranty Co. v. Board of Com'rs, 145 Fed. 144, 148, 76 C. C. A. 114, 118; Jacobs v. Spalding, 71 Wis. 177, 189, 36 N. W. 608; Boardman v. Reed, 6 Pet. 328, 8 L. Ed. 415; Canal Co. v. Hill, 15 Wall. 94, 21 L. Ed. 64; O'Brien v. Miller, 168 U. S. 287, 297, 18 Sup. Ct. 140, 42 L. Ed. 469; Pressed Steel Car Co. v. Eastern Ry. Co., 57 C. C. A. 635, 637, 121 Fed. 609, 611; Uinta Tunnel, etc., Co. v. Ajax Gold Min. Co., 141 Fed. 563, 73 C. C. A. 35.

This contract, read and interpreted according to this rule, compels the conclusion that the intention of the parties to it and its legal effect were to make the sale one for cash and to retain the title and ownership of every part of the property in the vendor until it was paid for in cash. Nor is there anything in the evidence in this case dehors the contract to cast doubt upon or to shake this conclusion. The defendant concedes that the plaintiff owned the property when the contract was made, that the $10,000 was never deposited, that the vendees had paid from time to time, as their shipments were made under the contract, all of the $39,000 except $3,193.50 which remained unpaid, and the evidence is conclusive that the shipments for which the order bills of lading in suit were issued were shipments of a part of the property described in the contract, that these shipments were made in the name of the plaintiff as consignee as provided by the agreement, that the plaintiff is the owner and holder of these bills, that the value of the property is more than $3,193.50, the amount of the verdict, and that $3,193.50 of the $39,000 purchase price remains unpaid. There was evidence tending to show that the Jones Purchasing Agency sold the property to Shaw Bros., and that the property was removed and shipped in the name of the plaintiff to such destinations as the agency or Shaw Bros. directed. But the agency could not convey more than they had, they could not convey the title or the ownership of any part of the property before they paid for that part in cash and the possession of the agency and of Shaw Bros. before the shipment was, as against the plaintiff, a special possession, not as owners, but for the mere purpose of removing and shipping the property in the name of the plaintiff in accordance with the terms of the contract, and it did not affect the plaintiff's title. The result is that the title and ownership of the property described in the bills of lading in suit was in the plaintiff until the unpaid balance of the purchase price was paid, there was no substantial evidence that the title of Shaw Bros. was paramount to that of the plaintiff, and there was no error in the charge of the court to this effect.

There was no substantial evidence of any fraud in the issue of the bills of lading, but proof that they were issued in strict accordance with the terms of the contract and with the written instruction given by the agency to their agent at the shipping point before any shipments were made, to ship all the property purchased in the plaintiff's name, and there was no error in the charge of the court that this defense of fraud

in the bills of lading could not prevail, nor in its rulings on the evidence offered in the trial of that issue.

Counsel for the defendant did not claim that the defense of estoppel was conclusively established by the record, but expressed the opinion that the evidence concerning it presented a question for the jury. They specify as error, however, many rulings of the court in the trial of this issue.

[4, 5] On January 6, 1911, the plaintiff made its contract of sale to the Purchasing Agency under which the agency agreed to take up and remove the property sold at their expense and ship it in the name of the plaintiff and to pay for each shipment in cash before the title should pass from the plaintiff. On January 12, 1911, the plaintiff wrote a letter to Alvin Eastman, its agent at the place of shipment, to the effect that it had sold the property to the agency, and in the letter directed him to deliver the property to them, and one of the Shaw Bros., who purchased from the Purchasing Agency, testified that some time in January he saw this letter in the hands of Eastman. It is specified as error that the court charged the jury that the defense now under consideration was what is known in law as an estoppel and that it was spoken of by this court as "the familiar and salutary rule that one who, by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter rightfully acts on such belief so that he would be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial," and that the letter to Eastman would not sustain a finding of an estoppel in favor of Shaw Bros. But there was no error in this part of the charge because the court below correctly quoted the statement made by this court of the law of estoppel (H. Scherer & Co. v. Everest, 168 Fed. 822, 829, 94 C. C. A. 346, 353), and no reason why that statement is erroneous has been presented or is perceived, and because the letter was written and sent by the plaintiff to its agent and not to Shaw Bros. or to the defendant. They were strangers to the plaintiff's contract of sale, and it owed them no duty to disclose in this letter the terms of that contract. There was therefore no breach of duty to them and no negligence toward them in its writing and sending of that letter to its own agent, and there was no evidence that the plaintiff intended that any of them should ever see it or be induced by it to act in any way.

On January 6, 1911, the Jones Purchasing Agency made a contract to sell to Shaw Bros. for $60,000 a large lot of rails, fasteners and other railroad equipment, and in the subsequent performance of the contract Shaw Bros. obtained the property described in the bills of lading in this case which the plaintiff had contracted to sell to the Purchasing Agency. On January 23, 1911, the Shaw Bros. were dissatisfied with what they had done with the Purchasing Agency and with the slow delivery of the property by them and one of the Shaw Bros., accompanied by their attorney and another employé, went to the office of Mr. Chute, the agent of the plaintiff, and had an interview with him. The attorney for the Shaw Bros. did not testify regarding this interview, doubtless

because he was one of the attorneys for the defendant in this case and he deemed it unprofessional to act as a witness for his client. The witnesses who testified regarding that conversation agreed that Mr. Shaw asked Mr. Chute if they could buy the property of the plaintiff and that he replied that they could not, that they must deal with the Purchasing Agency, that he afterwards brought out the plaintiff's contract of January 6, 1911, with the Purchasing Agency and read portions of it to them. The remainder of the testimony regarding this interview is contradictory. The witnesses for the defendant testified that Mr. Chute told Mr. Shaw that the plaintiff had sold the property to the Purchasing Agency, that the agency owned it, that the plaintiff had no claim upon or interest in it, that Mr. Shaw did not ask Mr. Chute whether or not the sale was for cash, nor whether or not the agency had paid for the goods, nor what the terms of its contract were, and that Mr. Chute did not hand the plaintiff's contract of sale to the attorney for Shaw Bros. On the other hand, Mr. Chute testified that Mr. Shaw said that the Shaw Bros. had bought the property in controversy of the agency, and that the latter delayed shipping it, that Mr. Chute told Mr. Shaw that the plaintiff had sold the property according to the contract which he brought out and handed to the attorney of the Shaw Bros. who examined it, and that he (Mr. Chute) said nothing about claiming any interest in the property more than that shown by the contract.

[6] It is specified as error that the court instructed the jury that: (1) The burden of proof to establish the estoppel and to establish every essential element of it was upon the defendant; (2) that it was the duty of the jury to determine exactly what Mr. Chute said at the interview of January 23, 1911, and that, if all he said was that the plaintiff had sold the logging rails, that statement would not be sufficient to raise an estoppel because it was true that he had sold them; (3) that, if Mr. Chute was silent regarding the claim or interest of the plaintiff in the rails, that silence would not sustain a finding of an estoppel; (4) that the jury should take into consideration the probability that Mr. Chute would make a statement that the plaintiff had no interest in the rails, when, as a matter of fact it had not been paid anything for them and had the entire interest in them; (5) that if Mr. Chute handed the contract to the attorney for Shaw Bros., and he read it, the jury would not be justified in finding a verdict for the defendant because that fact would prove that whatever Mr. Chute said Shaw Bros. knew from the contract that the plaintiff had an interest in the rails and what that interest was so that they could not thereafter act in reliance upon what Mr. Chute said at the same time that he gave them the contract; and (6) that the jury could not find that the plaintiff was estopped until they first found that Shaw Bros. paid for the rails in reliance upon the statement of Mr. Chute that the plaintiff had no interest or claim upon the rails.

It is too plain for debate that the first, fourth, fifth, and sixth instructions here challenged were right and they will not be further considered. Shaw Bros. had made a written contract to purchase this property of the Purchasing Agency more than two weeks before their interview with Mr. Chute, and so far as appears they were then legally

bound by that contract to take the property and to pay for it. The plaintiff had no contract relation with them. They were strangers to its contract with the Purchasing Agency. Prior to the interview of January 23, 1911, the plaintiff owed no duty to them to notify them or any other parties who had bought or might buy of the Purchasing Agency, of the terms of its contract with that agency, or of its claim to or interest in the property. The rule of law primarily applicable to the relation of Shaw Bros. to the plaintiff was caveat emptor, the duty was on them, the purchasers from the vendees, to ascertain at their peril that the vendor's claim and interest had passed to the vendees from whom they were purchasing. No duty is imposed upon the original owner to inform the purchaser of his vendee that the title to the property which it has contracted to sell has not passed to the latter. Therefore the silence of a vendor in relation to the terms of his contract for a sale of personal property for cash under ordinary circumstances evidences no intention to deceive or mislead the purchaser from the vendee and shows no breach of duty or negligence toward him. Now the evidence in this case was undisputed that it was only before the interview of January 23, 1911, that Mr. Chute was silent regarding the claim and interest of the plaintiff. The defendant's witnesses testified that at that interview he told Mr. Shaw that the plaintiff sold the property to the Purchasing Agency and that the plaintiff had no claim to or interest in it, and Mr. Chute testified, on the other hand, that he told Mr. Shaw that the plaintiff had sold the property in accordance with its written contract with the Purchasing Agency and handed that contract to the attorney of the Shaw Bros. who took and examined it, and no one came to testify that Mr. Chute was silent on this subject, for his alleged act of handing the contract to the attorney spoke louder and more plainly than words. Hence the charge of the court regarding the silence of Mr. Chute was applicable, under the evidence in this case, to the time prior to the interview of January 23, 1911, only, and his silence during that time was clearly insufficient to sustain an estoppel.

Counsel say, however, that the plaintiff knew at the time of the interview that Shaw Bros. had bought or were buying the property of the Purchasing Agency and that its statement that it had sold it to them when it had in fact merely made a contract to sell it to them for cash, furnished a sound basis for the estoppel. Mr. Justice Field, in delivering the opinion of the Supreme Court in Henshaw v. Bissell, 18 Wall. 255, 271 (21 L. Ed. 835) declared that "there must be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud" to warrant the application of the doctrine of equitable estoppel and negligence which does not amount to a breach of duty, does not constitute constructive fraud, and is not sufficient to raise an estoppel. Farmers' & Merchants' Bank v. Farwell, 58 Fed. 633, 636, 639, 7 C. C. A. 391, 394, 397; New York Life Ins. Co. v. McMaster, 87 Fed. 63, 66, 30 C. C. A. 532, 535. No one asked Mr. Chute what the terms of the sale of the property by the plaintiff to the Purchasing Agency were, or whether it was a sale for cash or on time, or whether all or any part of the purchase price had been paid. It is common knowledge that

traders and business men frequently and honestly call property sold when they have made a contract to sell it, although the purchase price has not been paid and the title has not passed to the vendee, and contracts to sell for cash and contracts to sell on time are often termed sales for cash and sales on time before they have been performed. And after careful deliberation upon the question the conclusion of this court is that under the record in this case the fact, if it were a fact, that Mr. Chute told Mr. Shaw that the plaintiff had sold the property when it had only made a contract to sell it for cash evidenced no such intention to deceive or culpable negligence toward the Shaw Bros. as would sustain an estoppel in pais in their favor. The parts of the instruction of the court which have been assailed were extracted from a clear, concise, and consistent charge that if the jury found the other essential elements of an estoppel, that Mr. Chute stated to Mr. Shaw on January 23, 1911, as Mr. Shaw and his witnesses testified, that the plaintiff had no interest in or claim upon the property, they must find for the defendant, but that if they failed so to find they must return a verdict for the plaintiff. Complaint is made that certain requested instructions were not given, but the views already expressed dispose of the questions suggested by that complaint, and the conclusion is that there was no error in the charge of the court or in its refusal to charge.

Counsel for the defendant have assigned 78 alleged errors in the trial of this case. The controlling questions of law which were discussed at the bar and in the brief have now been considered and decided, and their decision rules many of these 78 specifications of error. It would serve no useful purpose to review the others seriatim, for they relate to minor questions and are either ill-founded in law or are rendered immaterial or conclusively shown not to have been prejudicial to the defendant by the application of the rules and principles which have been declared. Suffice it to say that none of these 78 specifications of error has escaped examination and consideration, but the result is that there was in the opinion of the court no error in the trial of this case which the record does not clearly prove could not have been prejudicial to the defendant, and the judgment below must be affirmed.

It is so ordered.