## GREAT WESTERN ELECTRO CHEMICAL CO. v. WEISENTHAL et al.

(District Court, S. D. New York. May 13, 1925.)

1. **Sales ☞82(3)—Buyer must pay on delivery, in absence of agreement for credit.**

Where sales agreement provided for payment net cash against shipping document prior to establishment of letter of credit for 25 per cent. of purchase price, but was silent as to terms of payment after establishment of credit, payment was required to be made on delivery, in absence of agreement that buyer was to have credit.

2. **Sales ☞183 — Buyer's failure to provide payment held breach of agreement.**

Where sales contract provided for net cash against shipping documents, "prior to establishment of letter of credit for 25 per cent." at point of shipment, refusal of bank to honor draft on letter of credit, and accept documents to be delivered only on payment of draft for balance, held breach by buyer, in that he had failed to provide payment at place of delivery as required, where contract contained no provision for credit.

At Law. Action by the Great Western Electro Chemical Company against Phillip Weisenthal and another, doing business under the firm name and style of Weisenthal & Co. Judgment for plaintiff.

Upon the trial of this action the parties stipulated that the case should be tried with one juror, and, at the close of the testimony, that a verdict should be directed by the court. Pursuant to this stipulation, both parties moved, at the close of the testimony, for the direction of a verdict. The action is brought by the plaintiff to recover of the defendant damages for breach of a contract for the sale of 75 tons of bleach, in three carload lots of 25 tons each; one car to be shipped each month during January, February, and March, 1921. The agreement, which is dated September 2, 1920, at San Francisco, Cal., reads as follows: Memorandum of agreement by which Great Western Electro Chemical Company of San Francisco agrees to sell, and Weisenthal & Co., New York City, N. Y., agrees to buy:

"Material: 35/37% Bleach.

"Quantity: 75 tons (2,000 lbs. each net weight) 3 cars of 25 tons each.

"Duration of contract: April 1, 1921.

"Time of Shipment: One car each month, during Jan., Feb., and Mar., 1921.

"Price: $86 per ton, f. o. b. Pittsburgh, Cal.

"Terms: Net cash against shipping documents prior to establishment of irrevocable letter of credit for 25 per cent. of purchase price with bank here. .

"Stipulations: It is to be forfeited to us in case of failure of buyer to take and pay for entire quantity covered by this contract.

"To be packed in 800 lb. drums.

"Great Western Electro Chem. Co.

"[Signed]    J. F. C. Hagens.

"Weisenthal & Co.

"[Signed]    P. Weisenthal."

Under date of October 2, 1920, the plaintiff received from the Crocker National Bank a letter of credit signed by an officer of the Irving National Bank of New York, reading as follows:

"Letter of Credit #16914.

"October 2, 1920.

"The Great Western Electro Chemical Company, Pittsburgh, Cal.—Gentlemen: You are hereby authorized to value on the Crocker National Bank, San Francisco, Cal., for account of Messrs. Weisenthal & Co., New York, at sight, for any sum or sums not exceeding in all fifteen hundred and 00/100 dollars ($1,500.00), to cover part payment on seventy-five (75) tons of bleach, 35 to 37 per cent. chlorine at $86.00 per ton f. o. b. Pittsburgh—shipment of 25 tons each month to New York during January, February, and March, 1921. The shipments must be completed and drafts drawn on or before March 31, 1921.

"The following documents are to be attached to your drafts and surrendered to the above-named drawees against payment: Invoice; certificate of analysis; weight certificate; railroad bills of lading issued to order, indorsed in blank.

"We hereby agree with the drawers, indorsers, and bona fide holders of the bills drawn in compliance with the terms of this credit that the same shall be duly honored on presentation by the above-named drawees.

"Drafts under this credit are to contain the clause, 'Drawn under credit #16914 of the Irving National Bank, New York, dated New York, October 2, 1920,' and are to be noted on the back hereof at the time of negotiation.

"Yours very truly."

Under date of October 7, 1920, the defendants wrote to their representative in San Francisco, Cal., the following letter:

"October 7th, 1920.

"T. E. Ehronberg, 16 California St., San Francisco, Calif.—Dear Sir: We have to-day sent out to the Crocker Nat. Bank of San Francisco, a letter of credit for $1,500.00 in favor of the Great Western Electro Chemical Company, upon which they can draw for any sum or sums not exceeding in all $1,500.00, to cover part payment on the three shipments of bleach to be made us, one during January, one during February, and one during March. Since they can draw on any of the three shipments to any sum that may suit them, we feel this fully covers the terms of our arrangement. We suppose that you will notify the Great Western Electro Chemical Company. Trusting this is entirely satisfactory, we remain.

"Very truly yours,

"Weisenthal & Company,

"By A. M. Schult."

This letter was delivered to the plaintiff by Mr. Ehronberg about the middle of October, 1920.

On January 28, 1921, the plaintiff shipped to Weisenthal & Co., of New York, 50,286 pounds of bleach, the price of which, under the terms of the contract, was $2,162.30. On the following day the plaintiff presented to the Crocker National Bank of San Francisco, Cal., railroad bills of lading issued to order and indorsed in blank covering this shipment, together with invoice, certificate of analysis, and weight certificate, and at the same time presented to the bank a draft drawn upon it in the sum of $500, together with a draft drawn on Weisenthal & Co. for the balance of the purchase price of the shipment, namely, $1,662.30, requesting payment of the first draft, and further requesting that they deliver the documents to Weisenthal & Co., only upon collection of the second draft covering the balance of the purchase price of the shipment, specifying that this collection should be made through the Irving National Bank of New York City. The officials of the Crocker National Bank refused to make payment of the $500 draft under the letter of credit, if the plaintiff directed that the documents could not be delivered without payment of the second draft of $1,662.30. After this refusal the plaintiff drew a draft for $1,500, the entire amount of the letter of credit, presented this to the Crocker National Bank, together with

all of the documents, and demanded payment thereof. Payment of the draft for $1,500 was refused on the ground· that not more than $500 on any one shipment could be paid under the terms of the letter of credit. Thereafter some efforts were made by the plaintiff to collect a draft for the full amount of the purchase price of this shipment through its own bank, but the proof does not disclose that the documents were ever formally presented to the defendants in New York, or any further demand or tender made. The breach alleged in the complaint as amended is the refusal of payment of the two drafts first presented. It was shown that the shipment was not received or accepted in New York by the defendants, but was sold by the plaintiff. During February the defendants were advised that the plaintiff regarded their failure to accept and pay for the bleach tendered in January as a breach of the entire contract, and that the defendants would be held in damages accordingly.

The plaintiff seeks to recover as its damages the difference between the contract price and the market value of the 75 tons of bleach called for under the terms of the contract.

A. W. H. Taylor, of New York City, for plaintiff.

Joseph Dannenberg, of New York City, for defendants.

THACHER, District Judge (after stating the facts as above). [1, 2] The phrase in the contract of sale, "net cash against shipping documents prior to establishment of irrevocable letter of credit for 25 per cent. of purchase price with bank here," is undoubtedly the product of stenographic error arising from the misuse of the word "prior" in place of the word "buyer." If the contract had read "buyer to establish" instead of "prior to establishment of," the manifest intention of the parties would have been accurately and precisely expressed; but in this case it is not necessary to correct what appears to be a manifest clerical error, as was done in O'Brien v. Miller, 168 U. S. 287, 297, 18 S. Ct. 140, 42 L. Ed. 469. Taking the words as written, the clause, "prior to establishment of irrevocable letter of credit," simply limits the preceding clause, "net cash against shipping documents," thus leaving the agreement silent as to the terms of payment if payment be made after the es-

tablishment of the credit. In such case, with respect to 25 per cent. of the purchase price, payment was provided for under the letter of credit. With respect to the balance, there being no agreement that the buyer was to have credit, the law requires payment to be made on delivery. Pond Creek Mill & Elevator Co. v. Clark (C. C. A.) 270 F. 482; Guarantee T. & T. Co. v. First Nat. Bank, 185 F. 373, 107 C. C. A. 429; In re Pittsburgh Industrial Iron Works (D. C.) 179 F. 151; Canadian Northern R. Co. v. Northern Mississippi R. Co., 209 F. 758, 126 C. C. A. 482; Williston on Sales, §§ 447 and 448. In this case the delivery contemplated was f. o. b. at point of shipment, and the shipping documents were required to be "surrendered" to the Crocker National Bank. Under these circumstances the seller adopted the only course open to it in order to carry out the agreement. Having made delivery in accordance with the agreement (Rosenberg Bros. & Co. v. Buffum Co., 234 N. Y. 338, 137 N. E. 609), it presented the documents with two drafts to the Crocker National Bank—one for approximately 25 per cent. of the purchase price, payment of which was demanded under the credit; the other for the balance of the purchase price, requesting the bank to surrender the shipping documents to the buyer only upon payment of the latter draft. The bank, however, refused to pay the drafts or to accept the documents with any strings, probably mindful of the provision of the letter of credit requiring "surrender" of the documents against payment under the credit. If the bank could thus rightfully refuse payment under the credit in the absence of an unconditional surrender of the documents, the primary duty of the buyers to make payment upon presentation of the documents nevertheless remained. Rosenberg Bros. & Co. v. Buffum Co., supra. Under these circumstances the office of the bank, being the only place where the documents could be presented, in view of the contract provisions and the terms of the credit, must be regarded as the place of payment, and by failing to provide payment there the buyers failed to pay for the merchandise as they were obligated to do. For this breach of the agreement the seller elected to regard the contract as at an end and sue for its damages.

A verdict in favor of the plaintiff is directed for $4,225, with interest on $1,325 from January 31, 1921, on $1,450 from February 28, 1921, and on $1,450 from March 31, 1921.